UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARCO ANTONIO GOMEZ-ORTIZ,

Petitioner,

v.

BRUCE SCOTT, *et al.*,

Respondents.

CASE NO. 2:26-cv-03284-GJL

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Marco Antonio Gomez-Ortiz is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On September 12, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from immigration detention. *Id.* Respondents to the Petition include Bruce Scott (Warden of the NWIPC) and Markwayne Mullin (U.S. Department of Homeland Security ("DHS") Secretary) (collectively "Respondents").[1] The Petition is fully briefed. Dkts. 1, 8, 12.

[1] The Parties have consented to proceed in this matter before a United States Magistrate Judge. Dkt. 6.

Having considered the Parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition (Dkt. 1) and **ORDERS** Petitioner's immediate release as set forth in the conclusion below.

## I. FACTUAL BACKGROUND

### A. Background and Immigration Proceedings

Petitioner is a native and citizen of Mexico who last entered the United States as a minor without inspection in approximately 2003. Dkt. 1 at 3; *see* Dkt. 9 at 2. Petitioner has since resided in the United States for more than two decades and has established ties within his community, including homeownership, employment, and two United States citizen children. Dkt. 1 at 4; Dkt. 3 at 4–103.

On July 4, 2026, Petitioner was arrested by immigration officials and subsequently transferred to NWPIC, where he remains detained. Dkt. 1 at 4; Dkt. 9 at 2. Petitioner is currently in removal proceedings and is seeking cancelation of removal. Dkt. 1 at 4; Dkt. 9 at 2–3.

### B. Prior Habeas Proceedings

In prior habeas proceedings, *Gomez-Ortiz v. Scott*, 2:26-cv-2637-TMC, Dkt. 9 (W.D. Wash. Aug. 14, 2026), Petitioner obtained relief as a member of the certified "Bond Denial Class" in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. 2025), which was affirmed by the Ninth Circuit in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). Pursuant to that relief, Petitioner received a court-ordered individualized bond hearing before Immigration Judge ("IJ") John Odell on September 2, 2026. Dkt. 2-1.

### C. Immigration Bond Hearing

As evidence at the bond hearing, the government submitted a DHS Form I-213 describing Petitioner's alleged conduct during his immigration arrest. Dkt. 11 at 128–31. The Form contained allegations concerning Petitioner's attempt to evade arrest, including allegations that

Petitioner fled on foot after immigration officials activated emergency lights, gave clear commands to stop, and announced themselves as law enforcement. Dkt. 11 at 130. At the hearing, Petitioner contested the significance of those allegations. He acknowledged that he initially ran from arresting officers but testified that his reaction was instinctual, motivated by fear, and that he voluntarily submitted to arrest immediately upon "realizing what he was doing." Dkt. 2 at 2. Petitioner also presented evidence of his longstanding residence in the United States, homeownership, two United States citizen children, coursework to improve his English-language proficiency, community support, and lack of criminal history. Dkt. 3 at 4–103.

IJ Odell denied bond, finding that Petitioner presented a flight risk. Dkt. 2-1. The IJ's decision was issued in a checkbox order that contained no written findings or explanation of the basis for the flight-risk determination. *Id.* No audio recording or transcript of the bond hearing was created. Dkt. 2 at 2; Dkt. 10. Petitioner's counsel attests that the IJ provided no oral explanation or reasoning for his decision at the hearing. Dkt. 2 at 2–3. Respondents do not dispute this account of the proceedings.[2]

## II. PROCEDURAL BACKGROUND

Petitioner initiated this action on September 12, 2026, by filing a federal habeas Petition and supporting materials. Dkt. 1; Dkts. 2, 2-1; Dkt. 3. Respondents filed a Return and supporting materials on September 28, 2026. Dkt. 8; Dkt. 9; Dkts. 10, 10-1–10-4; Dkt. 11. Petitioner filed a timely Traverse. Dkt. 12. Thus, this matter is now fully briefed and ready for consideration by the Court.

//

[2] Respondents' evidentiary submissions about what occurred at the bond hearing are as follows: "The Petitioner, represented by counsel, had his bond hearing on September 2, 2026. An immigration judge denied bond for Petitioner and found him to be a flight risk due [*sic.*]" Dkt. 9 at 3. The Court understands the incomplete reference to "due" as a typographical error, and notes that the declaration identifies no factual or legal basis for the IJ's flight-risk finding.

## III. HABEAS STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, habeas petitioners have the burden of demonstrating there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## IV. DISCUSSION

Petitioner seeks federal habeas relief from his immigration detention, arguing that his immigration bond proceedings and resulting bond denial decision constituted an abuse of discretion and violation of due process. Dkt. 1 at 6–13. Petitioner further argues that exhaustion of administrative remedies is not required and that immediate release is the only appropriate remedy. *Id.* at 13–18.

In their Return, Respondents maintain that Petitioner must exhaust his administrative remedies before seeking habeas relief and that, even if the Court reaches the merits of his claim, that the IJ neither abused his discretion nor violated Petitioner's due process rights. Dkt. 8 at 5–13.

In his Traverse, Petitioner emphasizes that Respondents identify no contemporaneous findings or reasoning supporting the IJ's bond-denial decision and that Respondents do not dispute that no audio recording, transcript, or other memorialization of the IJ's reasoning exists. Dkt. 12. Petitioner maintains that these deficiencies in his immigration bond proceedings further demonstrate the propriety of habeas relief. *Id.*

The Court agrees with Petitioner, **GRANTS** the Petition, and **ORDERS** Petitioner's immediate release as set forth in the conclusion below.

**A. Subject Matter Jurisdiction**

Respondents do not dispute the Court's jurisdiction to review Petitioner's claim that the IJ's bond denial decision was an abuse of discretion and violation of due process. *See* Dkt. 8. Nevertheless, because the Court has an independent obligation to assure itself of its subject-matter jurisdiction, the Court first confirms that Petitioner's claim is reviewable.

In general, the Court does not have jurisdiction to review discretionary bond decisions. On this point, 8 U.S.C. § 1226(e) provides that:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any [noncitizen][3] or the revocation or denial of bond or parole.

"That provision does not, however, preclude habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (cleaned up). "Claims that the discretionary bond process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of [28 U.S.C.] § 2241." *Id.* (cleaned up); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022) ("Although the IJ's discretionary bond determination was not reviewable in federal court…, we would have had jurisdiction under 28 U.S.C. § 2241 to consider any error of law in [a noncitizen's] agency proceedings, including any claimed due process violation."). Accordingly, "a district court has jurisdiction to review an IJ's discretionary bond denial where that bond denial is challenged as

[3] The Court uses the term "noncitizen" as equivalent to the term "alien" that is used in the statute. *See Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

legally erroneous or unconstitutional." *Kharis v. Sessions*, Case No. 18-cv-04800-JST, 2018 WL 5809432, at *4 (N.D. Cal. Nov. 6, 2018) (collecting cases).

Reviewable claims of legal error include application of the incorrect legal standard, ignoring or "seriously mischaracterizing" important facts, and irrational or unfounded application of a legal standard to an established set of facts. *Hinds v. Bondi*, No. 24-1878, 2026 WL 122480, at *2 (2d Cir. Jan. 16, 2026); *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, 2026 WL 969764, at *6 (W.D. Wash. Apr. 10, 2026) (reviewing for abuse of discretion and granting relief where IJ supplied "no rationale" for bond denial decision and none could be discerned from the record).

Claims of constitutional injury, such as procedural due process violations, are also reviewable by a district court. *W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *4 (W.D. Wash. Jan. 30, 2026) (applying *Mathews v. Eldridge*, 424 U.S. 319 (1976)). Even in the context of these reviewable errors, however, district courts may not "review underlying factual determinations such as the IJ's factfinding on credibility," their "weighing of the evidence," or the IJ's "logic…in drawing inferences" from the evidence. *Hinds*, 2026 WL 122480, at *2.

Here, Petitioner does not ask the Court to reweigh the evidence or independently determine whether he poses a flight risk. Dkts. 1, 12. Rather, he challenges the legal sufficiency of the bond redetermination hearing given the lack of any neutral contemporaneous record of the hearing or of the IJ's reasoning for bond denial decision. *Id*. Petitioner's due process claim alleges a reviewable legal error rather than an unreviewable discretionary or factual determination and therefore falls squarely within the Court's habeas jurisdiction.

**B. Prudential Exhaustion**

"On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). That is, the necessity of administrative exhaustion in § 2241 actions is governed by sound judicial discretion. *McCarthy v. Madigan,* 503 U.S. 140, 144 (1992), *superseded by statutory amendment as noted in Booth v. Churne*r, 532 U.S. 731, 738 (2001). Nevertheless, "[p]rudential limits, like jurisdictional limits and limits on venue, are ordinarily not optional." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35–36, n.5 (2006).

To determine whether prudential exhaustion is appropriate, courts consider the following factors, often referred to as the *Puga* factors: (1) whether "agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision," (2) whether "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme," and (3) whether "administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). That is, under the *Puga* factors, courts should require administrative exhaustion where it would aid in developing a more complete factual record for federal judicial review, prevent forum shopping, and conserve federal judicial resources by permitting agencies to correct their own mistakes where they are likely to do so.

Even if the *Puga* factors weigh in favor of prudential exhaustion, a petitioner may avoid the requirement by demonstrating any one of the following *Laing* factors apply in their case: (1) "administrative remedies are inadequate or not efficacious," (2) "pursuit of administrative remedies would be a futile gesture," (3) "irreparable injury will result," or (4) "the administrative

proceedings would be void." *Laing*, 370 F.3d at 1000 (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)); *see Aden v. Nielsen*, No. 2:18-cv-1441-RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) ("The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies.") (citing *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1000 (N.D. Cal. 2018)).

In this case, even if exhaustion were required, waiver of that requirement is warranted by at least one of the *Laing* factors. Namely, Petitioner has shown that irreparable injury would result if he were to remain in immigration detention while pursuing administrative remedies through the BIA. *See Scott v. Wamsley*, Case No. 2:25-cv-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025) ("Courts in this Circuit have regularly waived exhaustion requirements for noncitizens who face 'irreparable injury' from being detained for 'months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal.'").

The record before the Court reflects that Petitioner's detention separates him from his two United States citizen children, prevents him from returning to the home that he owns and from resuming his employment, and imposes emotional and financial hardship on his family. Dkt. 1 at 16; *see* Dkt. 3 at 14–17, 22–37, 94–101. Moreover, as recently noted by another court in this District, the frequently delayed remedies available through the BIA are substantially less efficacious than the comparatively swift relief available via habeas corpus proceedings:

> If Petitioner is correct that [his] detention is unlawful and h[is]immediate release is required, even a successful BIA appeal process is no adequate substitute for the swifter redress available through the habeas writ. A petition for writ of habeas corpus is "entitled by statute to special, preferential consideration to insure expeditious hearing and determination." *Van Buskirk v. Wilkinson*, 216 F.2d 735, 737–38 (9th Cir. 1954). This is for good reason: the Constitution cannot abide the prolonged confinement of a person who by law should be at liberty. Therefore,

> "[t]he application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from [her] within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000).

*Roberts v. Scott*, No. 2:26-CV-01333-TL, 2026 WL 2071146, at *4 (W.D. Wash. July 17, 2026) (last alteration in original).

Thus, the Court concludes that the circumstances presented here warrant waiver of the exhaustion requirement.

**C. Merits**

Habeas courts review IJ's bond determinations for abuse of discretion. *Martinez v. Clark*, 124 F.4th 775, 779, 784–85 (9th Cir. 2024); *Anyanwu v. Bondi*, No. 25-cv-995-JLR-MLP, 2025 WL 3466910, at *4 (W.D. Wash. Oct. 6, 2025*), report and recommendation adopted*, 2025 WL 3187485 (W.D. Wash. Nov. 14, 2025). When reviewing a determination for abuse of discretion, a court may not reweigh evidence but may determine whether the IJ applied the correct legal standard. *Martinez*, 124 F.4th at 785 (citing *Wilkinson v. Garland*, 601 U.S. 209 (2024)); *Garcia Ortiz v. Henkey*, No. 1:26-cv-00043-BLW, 2026 WL 948275, at *4 (D. Idaho Apr. 7, 2026) (adding, in more colorful terms, that federal district courts are "not required to countenance a sham" when reviewing discretionary bond determinations).

The following are factors considered by IJs in making discretionary bond determinations:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (B.I.A. 2020).

To sustain a permissible flight risk finding, any factor considered by an IJ must rationally bear on a noncitizen's likelihood to appear for immigration proceedings. *Matter of Patel*, 15 I. & N. Dec. 666, 667 (BIA 1976) (reversing flight risk finding where IJ relied on factors bearing "little if any relevance to the issue of whether or not the [noncitizen] is likely to appear for his deportation proceeding"). Further, factors should not be viewed so broadly or given such undue weight as to risk either denying release or "requiring a bond of almost every [noncitizen] who is held in deportation proceedings." *Id.* (reversing IJ's order requiring bond where evidence of criminal arrest was unclear and only other factors considered were the noncitizen's potential avenues for relief from removal, a factor likely to apply nearly universally to noncitizens pending removal).

Given the significant liberty interest at stake for noncitizens in immigration detention and the weak or non-existent governmental interest in continued detention without adequate process, courts in this and other districts have found due process violations where IJs abuse discretion in bond determinations. *See W.T.M.*, 2026 WL 262583, at *4; *Soto Gimenez v. Hernandez*, No. 2:26-CV-00966-GJL, 2026 WL 1156075, at *6 (W.D. Wash. Apr. 29, 2026) (collecting cases).

In this case, Petitioner has satisfied his burden of demonstrating by a preponderance of the evidence that reviewable legal or constitutional errors pervaded his immigration bond proceedings and warrant the grant of habeas relief. In particular, Petitioner submits evidence that the IJ denied bond without any oral reasoning or explanation of his application of the law to the facts of Petitioner's case. Dkt. 2 at 2–3. Petitioner's evidence shows there was no contemporaneous record of the bond proceedings either in a neutral form via transcript or audio-recording or from the perspective of the IJ via a contemporaneously prepared written memorandum. *Id.*; *see also* Dkt. 10 (confirming that "Petitioner's bond hearing was not recorded."). The only record from the proceeding is the IJ's checkbox order, which marks

Petitioner as a flight-risk, denies bond, and lacks any reasoning or application of law to the facts of Petitioner's case. Dkt. 2-1.

In other words, Petitioner, Respondents, and this Court can only speculate as to what combination of facts and law formed the basis of the IJ's decision. A decision that, for Petitioner, deprived him of a fundamental liberty interest for which he is guaranteed constitutional due process. On this record, the Court cannot find Petitioner was provided the process due to him.

Urging a different result, Respondents contend that the government's sole evidence submitted at the bond hearing—a DHS I-213 Form containing a description of Petitioner's alleged conduct during his immigration arrest—could have provided a rational evidentiary basis for the IJ's flight-risk finding. Dkt. 8 at 11–12; Dkt. 11 at 128–31 (DHS I-213 Form). In the absence of any other explanation, Petitioner's counsel also speculates that the IJ may have relied on that evidence. Dkt. 2 at 2. But the record contains no indication that the IJ actually relied on the government's evidence of the circumstances of Petitioner's arrest, much less how that evidence was weighed against Petitioner's account of the same events or Petitioner's substantial evidence supporting release presented at the hearing. It is undisputed that the IJ provided no reason for his finding at the bond hearing, *id.* at 2–3, and no speculation by Petitioner or *post hoc* rationalization by Respondents can create a reasoned decision absent one.

The absence of any reasoned explanation is particularly significant given the evidence presented in this case. At the hearing, Petitioner acknowledged that he initially fled officers but testified that his reaction was instinctual and based in fear and that he voluntarily submitted to arrest immediately upon "realizing what he was doing." Dkt. 2 at 2. Perhaps more importantly, Petitioner presented strong evidence of his longstanding stability, ties to the community, and strong incentive to appear for immigration proceedings, including his more than two-decades of residence in the United States, homeownership, two United States citizen children, coursework

to improve his English-language proficiency, community support, and lack of criminal history. *See* Dkt. 3 at 4–103.

Although the IJ was not required to credit Petitioner's explanation or afford greater weight to his evidence of community ties, an isolated incident during arrest cannot *per se* and without further explanation establish that a noncitizen presents an ongoing flight risk. *See, e.g.*, *Layata Hernandez v. Hernandez*, No. 2:26-CV-01574-GJL, 2026 WL 1723680, at *8 (W.D. Wash. June 15, 2026) ("[A]llegations concerning isolated conduct during an arrest encounter, without more, do not establish a rational connection to present-day flight risk.").

Indeed, in *Mejia Rodriguez v. Hernandez*, No. 26-cv-3221-DGE, 2026 WL 2982323, at *1 (W.D. Wash. Oct. 5, 2026), an IJ was presented with evidence containing differing accounts of a noncitizen's conduct during arrest, including evidence from the government that the noncitizen attempted to flee from immigration officials and the noncitizen's testimony that he acted out of fear during the arrest encounter. *Id.* The IJ ultimately found that the noncitizen presented a flight risk, but the sole-stated reason for that finding was the noncitizen's use of a false Social Security number with no reference made to the alleged circumstances of arrest. *Id.*

*Mejia Rodriguez* illustrates why the Court cannot simply presume that IJ Odell relied on the government's evidence concerning the circumstances of Petitioner's arrest merely because it was presented at the hearing. Here, without any record or explanation from the IJ, the Court cannot determine whether the alleged attempt to flee formed the basis for the flight-risk determination or whether the IJ meaningfully considered the competing evidence and applied the relevant legal factors to the facts of Petitioner's case.

Moreover, another court in this District recently found that an IJ abused their discretion where they intentionally declined to record the bond proceeding and failed to meaningfully address extensive evidence favoring release. *Saparali Uulu v. Scott*, 2:26-cv-01631-TL, Dkt. 15

at 12–19 (W.D. Wash. Jul. 10, 2026). Although the record here does not establish that the IJ intentionally failed to create a record of Petitioner's bond hearing, the absence of any neutral record of the proceedings and of any contemporaneous reasoning from the IJ similarly prevents meaningful review of the bond denial decision in Petitioner's case. *See also Morales Ortiz v. Scott*, No. 2:26-CV-02190-SAB, 2026 WL 2240218, at *2 (W.D. Wash. Aug. 4, 2026) (issuing strong criticism of an IJ's failure to create a contemporaneous record in another immigration bond proceeding).

In that regard, the instant case is distinguishable from *Mendoza v. Hernandez*, No. 2:26-cv-2804-MLP, 2026 WL 2620253 (W.D. Wash. Sept. 4, 2026), where another bond denial decision by an IJ was supported by a reasoned explanation and application of law to the facts of the case. *Id.* at *3–4. In *Mendoza*, the record of the bond proceedings demonstrated that, in determining that a noncitizen posed a flight risk, the IJ considered the evidence submitted and credited the government's evidence of a noncitizen's attempt to flee during his immigration arrest over the noncitizen's competing account. *Id.* Under those circumstances, the court sitting in habeas review appropriately declined to reweigh the evidence or substitute its judgment for that of the IJ. *Id.* (citing *Martinez*, 124 F.4th at 782–82 and *Wilkinson*, 601 U.S. at 225).

Here, however, Petitioner does not ask the Court to reweigh evidence—nor could he make such a request given the absence of any contemporaneous record of the weight that the IJ assigned to competing evidence. Rather, the absence of any reasoned explanation from the IJ leaves the Court without a basis to determine whether he meaningfully considered the evidence presented during the bond proceedings or rationally applied the law to the particular facts of Petitioner's case.

"Bond determinations must bear a rational relationship between the governing legal standards and the facts and evidence in a given case. Where those minimum requirements are not

met, a resulting bond denial decision violates due process." *Soto Gimenez*, 2026 WL 1156075, at 8. In the case at bar, it is undisputed that the IJ failed to provide *any* contemporaneous reasoning—either orally or in writing—for his decision to deny bond and deprive Petitioner of his liberty. *Post hoc* rationalizations and speculation as to what may have formed the basis of the IJ's decision are no substitute for meaningful judicial review. *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) ("The Court is left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors. The Court must conclude that the immigration judge failed to do so, which constitutes an abuse of discretion.").

The Court therefore concludes that the bond denial decision in this case was an abuse of discretion and that Petitioner's continued detention pursuant to the IJ's unreasoned flight-risk determination violates due process.

## V. REMEDY

The Court next considers the appropriate remedy. In this area, habeas courts have "a fair amount of flexibility." *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). As noted, "the traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484. "In modern habeas practice, courts often 'employ a conditional order of release,' which orders the government to release the petitioner unless it 'takes some remedial action' that corrects" the government's violation of the law. *Cardozo v. Bostock*, No. 2:25-cv-00871-TMC, 2025 WL 2592275, at *2 (W.D. Wash. Sept. 8, 2025) (quoting *Harvest v. Castro*, 531 F.3d 737, 741–42 (9th Cir. 2008)). After issuing a conditional writ, a district court retains jurisdiction to ensure compliance with the writ and may order unconditional release if the government fails to comply with the initial habeas order. *Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020).

The Court finds conditional release would not be an appropriate remedy here. The bond hearing at issue was conducted pursuant to a prior grant of habeas relief, in which the Court

ordered Respondents to provide Petitioner with a legally sufficient custody determination. *Gomez-Ortiz*, 2:26-cv-2637-TMC, Dkt. 9 (W.D. Wash.); Dkt. 11 at 133–34.

Respondents have already been afforded an opportunity to cure legal deficiencies underlying Petitioner's detention. Ordinarily, Respondents' failure to cure the legal deficiencies alone would be sufficient justification to grant the requested relief. *See Harvest*, 531 F.3d at 742 ("The consequence when the State fails to replace an invalid judgment with a valid one is always release.").

However, the instant record further supports this remedy. Respondents failed to cure the previous due process violation despite the real possibility that this Court would again be called upon to evaluate whether Petitioner received adequate due process. Although the District Court previously denied Petitioner's request for immediate release and explicitly deferred to the IJ's application of the INA bond hearing framework, U.S. District Judge Tiffany Cartwright also observed that "the record suggests that [Petitioner] is neither a flight risk nor a danger to the community." *Gomez-Ortiz*, 2:26-cv-2637-TMC, Dkt. 8 at 2. While the IJ retained broad authority to determine Petitioner was indeed a flight risk notwithstanding Judge Cartwright's observation, the IJ's failure to record his contemporaneous reasoning *in any way* beyond the checkbox order further reduces the prospect that Petitioner would receive adequate due process through a subsequent bond hearing.

Accordingly, the Court concludes that no further immigration bond proceedings are necessary or appropriate. Petitioner's continued detention is not supported by a lawful bond determination, and additional delay for further proceedings would not cure that deficiency. *See, e.g., Escalante Perez v. Hernandez*, No. C26-0956 TSZ, 2026 WL 1004559, at *2 (W.D. Wash. Apr. 14, 2026) (ordering immediate release where IJ abused discretion at court-ordered bond hearing).

The Court therefore **ORDERS** Petitioner's immediate release from immigration detention.

## VI. CONCLUSION

For the foregoing reasons, Petitioner's habeas Petition (Dkt. 1) is **GRANTED** and the Court **ORDERS** as follows:

(1) Respondents **SHALL release** Petitioner Marco Antonio Gomez-Ortiz from custody **IMMEDIATELY** either on his own recognizance or under conditions of supervision reasonably necessary to ensure his appearance; and

(2) Respondents **SHALL** file a declaration within **24 HOURS** of the issuance of this Order, confirming that Petitioner has been released from custody and providing the date and time of release.

Dated this 27th day of October, 2026.

Grady J. Leupold
United States Magistrate Judge